## NEW MEXICO, R. G. & P. R. Co. *v.* CROUCH and others.

*(Supreme Court of New Mexico.* February 3, 1887.)

EJECTMENT—WHEN IT LIES—PLAINTIFF EXPELLED FROM POSSESSION—PUBLIC DOMAIN.

An action of ejectment will lie, under Comp. Laws N. M. § 1570, enacting that "an action of ejectment will lie for the recovery of the possession of a mining claim, as well also of any real estate, where the party suing has been wrongfully ousted from the possession thereof, and the possession wrongfully detained," in favor of a plaintiff who has inclosed part of the public domain withdrawn from settlement, and built a house within the inclosure, and been from thence expelled by threats of the defendants, having no better title, provided a proper demand has been made for restoration of the possession.

Appeal from district court, Third judicial district, sitting in Grant county. Action of ejectment. Judgment for plaintiff. Defendants appeal.

*John D. Bail, Catron, Thornton & Clancy, S. B. Newcomb,* and *Henry L. Waldo,* for appellee. *Fielder & Fielder,* for appellants.

HENDERSON, J. The plaintiff corporation brought ejectment against the defendants, John S. Crouch and others, named in the declaration, to recover

---

possession of a plat of ground called "East Park" in the town of Deming. The railroad company had constructed a line of road from San Marcial, in Socorro county, to a junction with the Southern Pacific Railroad Company, at Deming. The lands in controversy were within the terms of a grant by congress to the Texas & Pacific Railroad Company, and were withdrawn from sale or entry by the government, subject to the provisions of the Texas and Pacific grant. In this condition of the title, the plaintiff corporation entered upon and inclosed the grounds with a substantial board and wire fence, and had an agent in possession holding the lands in controversy as its property for a year or 13 months, when the defendants, without title from any source, or even color of title, forcibly entered the premises, and tore down the fence, and by threats and intimidation kept the plaintiff company out of possession. The company brought this action immediately after the entry and occupation by the defendants. Neither party had any title whatever. It may be assumed from the agreed statement of facts that the title was in the government. The pretense under which the defendants undertook to justify their entry was that the individuals who did enter were stockholders or incorporators of the Grant County Town-site Company, and that they entered for the purpose of extending streets, and laying off an addition to the town of Deming.

Several questions are presented in the assignment of errors. We do not think it necessary from the facts shown of record, to discuss the many questions presented. Defendants contend that, as the plaintiff did not show title, —not even a colorable one,—it cannot recover in this form of action. They call our attention to the usual rule in this form of action that the plaintiff must recover, if at all, on the strength of his own and not upon the weakness of the defendants' title. To answer this almost universal rule, and to show it has no application to this case under the laws of New Mexico, we are cited to section 1570, Comp. Laws, which is in the following terms: "An action of ejectment will lie for the recovery of the possession of a mining claim, as well also of any real estate, where the party suing has been wrongfully ousted from the possession thereof, and the possession wrongfully detained."

At the date of the intrusion of the defendants upon the plat of ground in question, the plaintiff had, in addition to the inclosure, heretofore stated, by means of a board and wire fence, a house within the inclosure occupied by plaintiff's agent, which he continued to occupy until driven out by the defendants' threats of violence. Did these acts of plaintiff constitute such possession as to bring it within the terms of the statute? Was it the purpose or intention of the legislature to protect such holdings as a possession, or was the statute intended as a protection only to persons who went upon lands, either of the government or its grantees, under some legal, or at least colorable, claim of right to the land, in addition to the mere right of temporary use thereof? The contention of appellants is that, in order to entitle a possessor of lands to recover in ejectment under the above-quoted statute, it is indispensably necessary that the possession be actual and adverse, so as to enable the occupier, by lapse of time, to perfect his legal title by force of the statute of limitations. That such possession must be actual, within the legal sense of that term, we think cannot be doubted. In the case of an entry without any pretense of title, there can be no such thing as a constructive legal possession, for the reason that it is *title* alone that gives constructive possession. But if the argument of appellants' counsel be correct, and the true interpretation of the statute, there is no remedy whatever afforded by law to the first actual possessor of any portion of the public domain, as against another, who, without the shadow of legal title, by force turns the first possessor out of possession. The intruder can with impunity appropriate the improvements made by his weaker adversary, and he, in turn, may be compelled to succumb to superior force, and turn over perhaps the fruits of years of hard labor. No such construction will be given the statute, unless it is the only one it

can fairly receive. It is to our mind very clear that the statute is broad enough to include possession wholly disconnected from the legal, or even colorable, title. While such actual possession, though continued for an indefinite time, would not ripen into a legal title, or constitute an equity, as against the United States, still as against a wrong-doer, it will be protected, and the possession restored when it has been illegally taken and detained.

The case of *Coryell* v. *Cain*, 16 Cal. 567, is directly in point here. FIELD, C. J., in delivering the opinion, said: "It is undoubtedly true, as a general rule, that the claimant in ejectment must recover upon the strength of his own title, and not upon the weakness of his adversary's, and that it is a sufficient answer to his action to show title out of him and in a third party. But this general rule has, in this state, from the anomalous condition of things arising from the peculiar character of the mining and landed interests of the country, been, to a certain extent, qualified and limited. * * * And, with the public lands which are not mineral lands, the title, as between citizens of the state, where neither connects himself with the government, is considered as vested in the first possessor, and to proceed from him." Again, on the subject of what constitutes prior possession, the chief justice continues: "By actual possession is meant a subjection to the will and dominion of the claimant, and is usually evidenced by occupation, by a substantial inclosure, by cultivation, or by appropriate use, according to the particular locality and quality of the property."

What constitutes actual possession has been a source of much dispute and legal difficulty with courts of the highest standing and learning. In *Ford* v. *Wilson*, 35 Miss. 505, it is stated as the doctrine of the supreme court of the United States that it suffices that "visible and notorious acts of ownership are exercised over the premises." In *Coleman* v. *Billings*, 89 Ill. 189, it was held: "If there is continuous dominion manifested by continuous *acts* of ownership, it is sufficient." Mr. Justice STORY, in delivering the opinion of the supreme court in *Ellicott* v. *Pearl*, 10 Pet. 441, stated that no authority was necessary for so plain a proposition as that, "to constitute actual possession, it is not necessary that there should be any fence or inclosure of the land." See, also, *Leeper* v. *Baker*, 68 Mo. 405; *Kerr* v. *Hitt*, 75 Ill. 51; *Moore* v. *Thompson*, 69 N. C. 120; *Davis* v. *Bowmar*, 55 Miss. 671; *Mooney* v. *Cooledge*, 30 Ark. 655; *Brown* v. *Rose*, 48 Iowa, 233; Sedg. & W. Tr. Title Land, § 732, and authorities cited.

The authorities above cited very clearly show that the acts of the plaintiff in taking possession, inclosing the ground, putting a house within the inclosure, and causing it to be occupied by its agent down to the date of his expulsion from the premises, constitute an actual possession, to the full extent of the inclosed strip or plat; and that the laws of this territory will restore such possession by an action of ejectment, provided the premises be withheld after proper demand.

In *Christy* v. *Scott*, 14 How. 282, the court say: "A mere intruder cannot enter on a person actually seized, and eject him, and then question his title, or set up an outstanding title in another. If the plaintiff had actual prior possession of the land, this alone is strong enough to enable him to recover from a mere intruder or trespasser who entered without title." *Bates* v. *Campbell*, 25 Wis. 613; Tyler, Ej. 72, 85, 105, 204; Sedg. & W. Tr. Title Land, §§ 718-720; *Coryell* v. *Cain*, 16 Cal. 567; *Jones* v. *Easley*, 53 Ga. 454; *Deemer* v. *Falkenburg*, ante, 57, 12 Pac. Rep. 717, (present term.)

The plaintiff having been wrongfully ousted from possession of the lands, and the possession wrongfully detained, it follows that the action was properly brought. The legislature thought proper to qualify and limit the old rule in ejectment in this territory, as was done in the state of California. It was within the power of the legislature to give a remedy by ejectment founded upon no higher or better title than mere naked prior actual possession. The

strength of the possessory title here consists in the prior actual possession; and, if that be shown, it corresponds to the legal title in cases where the rule requires the claimant to recover on the strength of his own and not upon the weakness of his adversary's title.

The court below committed no error in the charge, and, the evidence being sufficient to support the verdict, the court did not err in refusing a new trial. Finding no error in the record, the judgment of the court below is affirmed.