Filed 3/1/21  Thompson v. Ioane CA6
(unmodified opinion attached)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RICHARD L. THOMPSON,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>MICHAEL IOANE, SR. et al.,<br><br>      Defendants and Appellants. | H046111<br>(Santa Cruz County<br>Super. Ct. No. CV179290)<br><br>**ORDER MODIFYING OPINION<br>AND DENYING REHEARING**<br><br>**[NO CHANGE IN JUDGMENT]** |

THE COURT:

It is ordered that the opinion filed herein on February 8, 2021, be modified as follows:

On page 10, line 2 of the last partial paragraph, replace the word "lawsuits" with "a lawsuit" and delete the word "the" before "Michael" so that the sentence reads as follows:

The validity of the foreclosure sale has previously been actually litigated and conclusively decided in a lawsuit in which Michael was a party.

On page 11, delete the entire first full paragraph beginning with "The validity of the foreclosure sale was again litigated in Michael and Shelly's 1999 federal civil suit . . ." and ending with "That judgment too has long been final."

On page 12, first full paragraph, in the first sentence beginning with "The preclusive effect . . . ," replace the word "judgments" with "judgment," delete the words "and Shelly," and replace the word "them" with "him" so that it reads as follows:

The preclusive effect of the earlier judgment can be asserted, not only against Michael, but also against those in privity with him.

On page 12, first full paragraph, third sentence beginning with "Only Briana. . . ," replace the word "judgments" with "judgment" and in the last sentence beginning with "Therefore, she is . . . ," add the word "action" after "unlawful detainer" and delete the words "and federal civil suits" so that the paragraph reads as follows:

The preclusive effect of the earlier judgment can be asserted, not only against Michael, but also against those in privity with him. "A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." (*Bernhard v. Bank of America Nat. Trust & Savings Assn.* (1942) 19 Cal.2d 807, 811.) Only Briana purports to have an existing ownership interest in the Blue Gum property, which she claims to have acquired from Michael after the rendition of the judgement discussed above. Therefore, she is in privity with Michael, such that issue preclusion can be asserted against her based on the unlawful detainer action to which Michael was a party.

On page 12, last paragraph, in the first sentence beginning with "In sum . . . ," delete the words "and the judgment in case No. 99-21119 SW" so that the sentence reads as follows:

In sum, all of the Ioanes' arguments regarding the purported invalidity of the foreclosure sale are precluded by the unlawful detainer judgment.

There is no change in judgment.

The petition for rehearing and the associated request for judicial notice are denied.

Dated:_____                    _____

                                                         ELIA, ACTING P.J.


_____                    _____
BAMATTRE-MANOUKIAN, J.                                    DANNER, J.

3

Filed 2/8/21  Thompson v. Ioane CA6 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RICHARD L. THOMPSON,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL IOANE, SR. et al.,<br><br>    Defendants and Appellants. | H046111<br>(Santa Cruz County<br>Super. Ct. No. CV179290) |

This appeal involves a decades-long dispute over real property located on Blue Gum Avenue in Capitola (the Blue Gum property).  Plaintiff Richard L. Thompson, as Successor in Interest to James J. Thompson, successfully moved for summary judgment on causes of action for quiet title and declaratory relief, and the trial court entered judgment in Thompson's favor.  Defendants Michael S. Ioane, Sr., Shelly J. Ioane, and their adult children, Briana C. Ioane, Ashley M. Ioane, and Michael S. Ioane, Jr. (collectively, the Ioanes), proceeding in propria persona, appeal.[1]  We shall affirm.

I.    **BACKGROUND**

A.    *Factual Background*[2]

In late 1992, Arthur Michael Alvarez obtained a $260,000 loan from Commerce Security Bank.  The note evidencing Alvarez's loan was secured by a deed of trust (the

---

[1] We refer to the Ioanes by their first names for purposes of clarity.  We refer to Michael S. Ioane, Sr. as "Michael" and to Michael S. Ioane, Jr. as "Michael, Jr."

[2] We base our factual summary in part on the appellate records in *Thompson v. Ioane* (2017) 11 Cal. App. 5th 1180 (*Thompson*), case Nos. H043112 and H042104,

Deed of Trust) on the Blue Gum property. The Deed of Trust identified First American Title Insurance Company as the trustee. Commerce Security Bank was the beneficiary or lender and Alvarez was the trustor or borrower.[3]

Commerce Security Bank transferred its interest in the Deed of Trust to The Prudential Home Mortgage Company, Inc. in January 1993. In June 1994, The Prudential Home Mortgage Company, Inc. transferred its interest in the Deed of Trust to First Trust National Association, as trustee, Series # 1993-6.

In October 1997, First Trust National Association, as trustee, Series # 1993-6, by attorney in fact Norwest Mortgage, Inc., substituted Lonestar Mortgagee Services, LLC (Lonestar) as trustee under the Deed of Trust.

Alvarez defaulted on his loan. Lonestar, through its attorney in fact, recorded a Notice of Default and Election to Sell Under Deed of Trust on October 22, 1997.

---

two prior appeals in this case; we previously granted Michael's request for judicial notice of those appellate records. On November 4, 2019, the Ioanes requested that this court take judicial notice of (1) various recorded documents pertaining to the Blue Gum property (items 1-18, 23, 27, 32); (2) court records from Michael's bankruptcy cases (items 19, 20, 24-26); (3) other court documents (items 22, 28, 29, 31); (4) institution history for First Trust National Association maintained by the National Information Center of the Federal Reserve System (item 21); and (5) an email exchange with the individual who signed the deed granting the Blue Gum property to the Thompsons (item 30). Many of these documents are filings in this case or were admitted as evidence below such that they already are part of the appellate record and judicial notice is not necessary. The remaining documents purportedly establish Briana's chain of title to the Blue Gum property or demonstrate the invalidity of the 1998 foreclosure sale. As discussed below, the doctrine of issue preclusion bars the Ioanes from relitigating either of those issues, making those documents irrelevant (*Jordache Enterprises*, *Inc*. *v*. *Brobeck*, *Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [declining to take judicial notice of materials not "necessary, helpful, or relevant"]). Therefore, the request for judicial notice is denied.

[3] "In California, the financing or refinancing of real property generally is accomplished by the use of a deed of trust. [Citation.] Under a deed of trust, 'the borrower, or "trustor," conveys nominal title to property to an intermediary, the "trustee," who holds that title as security for repayment of the loan to the lender, or "beneficiary." ' [Citation.]" (*Orcilla v*. *Big Sur*, *Inc*. (2016) 244 Cal.App.4th 982, 994-995.)

2

The Ioanes contend that Alvarez had executed a second deed of trust, which was foreclosed before the first Deed of Trust. They trace their claim of title to that second deed of trust.

Michael filed for bankruptcy in the United States Bankruptcy Court for the Northern District of California on February 26, 1998 (case No. 98-51454-JRG-13). The Ioanes contend that the Blue Gum property was an asset of the bankruptcy estate. On July 15, 1998, the bankruptcy court found "that the case [had been] filed in bad faith" and ordered the automatic stay "terminated with respect to the interests of Bank United, it's [*sic*] agents, successors and assigns," in the Blue Gum property.[4] The court further ordered "that Bank United may proceed to exercise its rights under its Note and Deed of Trust, and to conduct and complete a non-judicial foreclosure sale of the Property in any manner permitted by law" and that "the relief granted in this order shall be effective in any other bankruptcy case . . . subsequently by this debtor filed with regard to the Property within one hundred eighty days from the date of entry of this order." Also on July 15, 1998, the bankruptcy court dismissed the case with prejudice "because it was filed in bad faith and is an abuse of the bankruptcy process" and ordered that Michael was "barred for a period of 180 days from July 8, 1998, from being a debtor in any case under this title pursuant to 11 U.S.C. §109(g),(1)."

---

[4] Evidence establishing Bank United's role and connection to the Deed of Trust has not been submitted in this matter. Thompson asserts that Bank United acted as "loan servicer and as agent on behalf of [First Trust National Association]." For that assertion, he relies on allegations in an unlawful detainer complaint involving the Blue Gum property and a statement in a court order dismissing a federal civil action brought by Michael and Shelly regarding the Blue Gum property. However, we cannot judicially notice the truth of those statements. (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882 ["while courts are free to take judicial notice of the *existence* of each document in a court file, including the truth of results reached, they may not take judicial notice of the truth of hearsay statements in decisions and court files"].)

Despite that order, Michael filed another Chapter 13 bankruptcy case on July 24, 1998. The Ioanes contend that the Blue Gum property was an asset of the bankruptcy estate.

On August 26, 1998, Lonestar executed a Trustee's Deed Upon Sale granting title to the Blue Gum property to Norwest Mortgage, Inc., "the highest bidder" on the property at the August 19, 1998 public auction. That Trustee's Deed Upon Sale erroneously identified Norwest Mortgage, Inc. as grantee. Accordingly, a corrective Trustee's Deed Upon Sale was recorded in October 1998 correctly identifying the grantee as First Trust National Association, as trustee, Series # 1993-6, by Norwest Mortgage, Inc., attorney in fact.

Michael's second bankruptcy case was dismissed on September 11, 1998.

On October 19, 1998, Bank United filed an unlawful detainer action against Michael in Santa Cruz County Superior Court case number MS981411. Bank United alleged that it was the servicing agent for the property owner, First Trust National Association, as trustee. It further alleged that "[t]he Property ha[d] been sold in accordance with Section 2924 of the California Civil Code under a power of sale contained in a Deed of Trust" and that "Plaintiff's said principal is the owner of the Property by virtue of that certain Trustee's Deed Upon Sale which was issued thereto. [First Trust National Association, as trustee]'s ownership of the Property became perfected by recordation of said Trustee's Deed Upon Sale in the Official Records of the County of Santa Cruz, State of California." Attached to and incorporated by reference into the unlawful detainer complaint was a Notice to Quit from First Trust National Association, as trustee, and Bank United, which was served on Michael and cited Code of Civil Procedure Section 1161a. In June 1999, the superior court entered judgment in favor of Bank United and against Michael.

Shelly filed for bankruptcy. She and Michael filed an adversary proceeding against Bank United and others in her bankruptcy case. In their first amended complaint,

they alleged that they were the owners of the Blue Gum property and that the foreclosure sale proceeded in violation of a bankruptcy stay. They sought possession of the Blue Gum property, among other relief. On July 10, 2000, the bankruptcy court granted summary judgment in favor of Bank United on the causes of action asserted against it by the Ioanes in the adversary proceeding.

In 1999, Michael and Shelly filed a separate civil suit against Bank United and others in federal district court (case No. 99-21119 SW). They asserted numerous causes of action, including one for "a violation of 11 U.S.C. §[§] 362 and 1301 related to the automatic stay in bankruptcy proceedings." The federal court dismissed the action with prejudice, "easily conclud[ing] that the present litigation is just one more in a string of frivolous lawsuits filed by the Plaintiffs . . . ." Among other things, the court concluded that, "[q]uite plainly, Plaintiffs' claims under 11 U.S.C. §§ 362 and 1301 are frivolous and must be dismissed."

On June 13, 2001, First Trust National Association, as trustee, Series # 1993-6, granted the Blue Gum property to James J. Thompson and Doris H. Thompson by grant deed.

The Ioanes filed a state court action against, among others, the Thompsons seeking to quiet title to the Blue Gum property (case No. CV138163). On July 24, 2002, the superior court granted a motion for judgment on the pleadings filed by the Thompsons. The court later entered judgment in favor of the Thompsons. This court affirmed that judgment on December 19, 2003. (*Olson v. Murray* (Dec. 19, 2003, No. H024770) [nonpub. opn.] (H024770).)

Doris and James Thompson passed away during the pendency of this litigation. The trial court substituted their son, Richard L. Thompson, as plaintiff.[5]

---

[5] For simplicity and consistency, we refer to the plaintiff and respondent throughout the opinion as "Thompson."

### B.  *Procedural History*[6]

Thompson filed a verified first amended complaint in 2014 against the Ioanes and others seeking a judgment quieting title in his favor, cancellation of various written instruments, and declaratory relief.[7]  Thompson later dismissed the cancellation of instruments cause of action.

Michael, Shelly, and Michael, Jr. answered the operative first amended complaint. In their answer, they admitted that "Briana Ioane claims not just an interest, but is the sole owner in fact of the Property" and denied "that Michael Ioane, Sr., Shelly Olson Ioane, Michael Ioane, Jr., or Ashley Marie Ioane claim an interest in the Subject Property."  Ashley and Briana separately answered the first amended complaint.  They admitted that "Briana Ioane claims not just an interest, but is the sole owner in fact of the Property" and denied that "Ashley Ioane or Michael Ioane, Jr. claims an interest in the Subject Property."

Briana filed a cross-complaint against Thompson, asserting various claims, including one for quiet title to the Blue Gum property.  The trial court sustained Thompson's demurrer to Briana's cross-complaint without leave to amend.  Briana appealed (case No. H042104).

Thompson moved for summary judgment in 2015 on grounds that claim and issue preclusion barred the Ioanes' defenses.  The trial court granted that motion and entered judgment in Thompson's favor.  Michael, Shelly, and Briana appealed (case No. H043112).

We resolved both appeals in a single decision issued on May 25, 2017 in *Thompson*.  We affirmed the order sustaining Thompson's demurrer to Briana's cross-complaint without leave to amend on two independent grounds.  First, we

---

[6] Our recitation of the procedural history is based in part on our prior decision in this matter, (case Nos. H042104, H043112, and H043350).

[7] All the defendants other than the Ioanes defaulted.

6

concluded that the doctrine of claim preclusion barred Briana's cross-claim seeking to quiet title to the Blue Gum property because case No. CV138163 (the Ioanes' earlier quiet title action) and Briana's cross-complaint involved identical causes of action and the same parties and there was a final judgment on the merits in case No. CV138163. Second, we determined that judicially noticeable facts showed that Briana's interest in the Blue Gum property depended on a void judgment, such that she could not state a claim for quiet title.

We reversed the judgment and directed the trial court on remand to vacate its order granting summary judgment in Thompson's favor. We concluded that "Thompson's own filings in this court and the court below reveal a triable issue of fact as to his chain of title. In the operative complaint, Thompson alleged that the basis of his title to the Blue Gum property is a grant deed from grantor First Trust National Association. His separate statement [of undisputed facts] asserted he purchased the property from Bank United. On appeal, Thompson claims he purchased the property from Bank United and '[a] deed conveying title . . . was delivered by First Trust National Association . . . .' He also contends that First Trust National Association 'merged or changed its name to Bank United,' but he does not support that contention with citation to the record. Nor does he point us to any record evidence explaining the relationship between Bank United and First Trust National Association. Accordingly, there is a triable issue of fact as to whether Thompson purchased the Blue Gum property from Bank United or First Trust National Association. That fact is material to Thompson's ability to properly trace his title."[8]

On remand, the Ioanes unsuccessfully moved for summary judgment.

---

[8] Contrary to the Ioanes' contention in this appeal, we did not conclude that Thompson intentionally misled this court regarding the relationship between Bank United and First Trust National Association, let alone admonish him for dishonesty. We merely noted the absence of evidence supporting his assertion about that relationship.

Thompson then moved for summary judgment again. Instead of relying solely on the doctrines of claim and issue preclusion, as he had in his first summary judgment motion, he submitted judicially noticeable recorded documents to affirmatively trace his title. The trial court granted that motion. The trial court denied motions by the Ioanes to amend their answers to the operative first amended complaint and to tax costs.

On July 10, 2018, the court entered judgment in favor of Thompson and against the Ioanes. The judgment enjoined the Ioanes "to make no further claim to said Blue Gum Property adverse to plaintiff, by legal action or otherwise, on the basis of any fact or facts that were proved, or which might have been proved, in the action." The Ioanes timely appealed.

## II. DISCUSSION

On appeal, the Ioanes challenge the grant of summary judgment to Thompson as well as the orders denying their motions for summary judgment, to amend their answers, and to tax costs. We address each order in turn.

### A. *The Trial Court Did Not Err by Granting Summary Judgment in Favor of Thompson*

#### 1. *Legal Principles and Standard of Review*

A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)[9] A plaintiff moving for summary judgment "bears the burden of persuasion that 'each element of' the 'cause of action' in question has been 'proved,' and hence that 'there is no defense' thereto." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "Once the plaintiff . . . has met that burden, the burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (§ 437c, subd. (p)(1).)

---

[9] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

"On appeal from the granting of a motion for summary judgment, we examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) "We consider 'all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) . . . .' " (*Id*. at p. 452, fn. 3.)

### 2. *Thompson Met his Initial Burden to Prove Each Element of his Causes of Action*

Two causes of action remained when Thompson moved for summary judgment. The first is an action seeking to quiet title to the Blue Gum property. The second is an action for declaratory relief seeking a declaration that Thompson is the sole owner of the fee simple title to the Blue Gum property and that the Ioanes and other defendants have no adverse interest in the Blue Gum property.

In moving for summary judgment on those causes of action, Thompson bore the burden to establish his title to the property and to refute the adverse claims he was seeking to extinguish. (*Miller v. Boswell* (1958) 162 Cal.App.2d 508, 511; *Barisich v. Lewis* (1990) 226 Cal.App.3d 12, 19.) Thompson met his burden to establish title to the Blue Gum property by tracing, through judicially noticeable recorded documents, his title to Alvarez, to whom the Ioanes also trace their title. Thompson also carried his burden to refute the Ioanes' adverse claims to the Blue Gum property. Specifically, he showed that Michael, Shelley, Ashley, and Michael, Jr. had disclaimed any interest in the property in their answers. And Thompson showed that this court had rejected Briana's claim of interest in the Blue Gum property in our prior opinion, holding that it depended on a void judgment.

9

### 3. The Ioanes Failed to Establish the Existence of a Triable Issue of Material Fact

The burden shifted to the Ioanes to show the existence of a triable issue of material fact. They attempt to demonstrate that a triable issue of material fact exists as to the validity of the August 1998 foreclosure sale of the Blue Gum property to First Trust National Association, as trustee, Series # 1993-6. Specifically, they contend that the foreclosure sale was improperly conducted in violation of the automatic stay order in Michael's second bankruptcy; that there were irregularities in various recorded documents; and that title did not pass to First Trust National Association, as trustee, Series # 1993-6 because First Trust National Association had previously changed its name to U.S. Bank Trust National Association. As discussed below, the validity of the foreclosure sale has been litigated numerous times over the past 22 years and the sale has been held to be valid. The doctrine of issue preclusion bars the Ioanes from attempting to resurrect that issue now. Accordingly, they failed to carry their burden to establish the existence of a triable issue of material fact.

"*Issue preclusion* prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action. [Citation.] Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action. [Citation.]" (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) The doctrine of issue preclusion "can be asserted only against a party to the first lawsuit, or one in privity with a party." (*Ibid.*)

The validity of the foreclosure sale has previously been actually litigated and conclusively decided in lawsuits in which the Michael was a party. In 1998, an unlawful detainer action was brought pursuant to section 1161a against Michael. The complaint in that matter alleged that "[t]he Property ha[d] been sold in accordance with Section 2924 of the California Civil Code under a power of sale contained in a Deed of Trust" and that First Trust National Association, as trustee, Series # 1993-6's "ownership of the Property

10

became perfected by recordation of said Trustee's Deed Upon Sale in the Official Records of the County of Santa Cruz, State of California." "The conduct of the sale and the validity of the resulting transfer of title to [First Trust National Association, as trustee, Series # 1993-6] were therefore directly in issue in the unlawful detainer case. Because the complaint was brought under section 1161a, it was proper for limited issues pertaining to the validity of title obtained by [First Trust National Association, as trustee, Series # 1993-6] in the sale to be raised and conclusively resolved. [Citations.]" (*Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, 974.) "Indeed, because the sole [asserted] basis" for First Trust National Association, as trustee, Series # 1993-6's right to possession of the Blue Gum property "was its 'duly perfected' legal title obtained in the nonjudicial foreclosure sale, the validity of [First Trust National Association, as trustee, Series # 1993-6's] title *had* to be resolved in the unlawful detainer action." (*Ibid.*) The judgment in the unlawful detainer action has long been final.[10]

The validity of the foreclosure sale was again litigated in Michael and Shelly's 1999 federal civil suit (case No. 99-21119 SW). There, the federal district court dismissed their claim for "a violation of 11 U.S.C. §[§] 362 and 1301 related to the automatic stay in bankruptcy proceedings" as "frivolous." Thus, the validity of the foreclosure sale—and specifically the claim that it was invalid because it violated the bankruptcy automatic stay—was litigated and decided against Michael and Shelly. That judgment too has long been final.

All of the Ioanes' arguments are predicated on the alleged invalidity of the foreclosure sale. As noted, the Ioanes offer multiple reasons why the sale was unlawful,

---

[10] The Ioanes make much of the fact that the unlawful detainer action was brought by Bank United, whose precise connection to First Trust National Association has not been proven in this action. But, for purposes of issue preclusion, what matters is that the judgment in that action conclusively resolved the very same issue raised here—the validity of the foreclosure sale and of First Trust National Association, as trustee, Series # 1993-6's resulting title—against Michael.

11

including the alleged invalidity of the Corrective Trustee's Deed Upon Sale and a name-change issue. Regardless of whether those precise factual matters or legal theories were presented in the prior actions, the identical issue requirement is satisfied because "the factual predicate of the legal issue decided in the prior case[s] [(i.e., validity of the foreclosure sale)] was sufficient to frame the identical legal issue in the current case . . . ." (*Textron Inc. v. Travelers Casualty & Surety Co.* (2020) 45 Cal.App.5th 733, 747.)

The preclusive effect of the earlier judgments can be asserted, not only against Michael and Shelly, but also against those in privity with them. "A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." (*Bernhard v. Bank of America Nat. Trust & Savings Assn.* (1942) 19 Cal.2d 807, 811.) Only Briana purports to have an existing ownership interest in the Blue Gum property, which she claims to have acquired from Michael after the rendition of the judgements discussed above. Therefore, she is in privity with Michael, such that issue preclusion can be asserted against her based on the unlawful detainer and federal civil suits to which Michael was a party.

In sum, all of the Ioanes' arguments regarding the purported invalidity of the foreclosure sale are precluded by the unlawful detainer judgment and the judgment in case No. 99-21119 SW. This is not the first time this court has reached that conclusion. In the Ioanes' 2003 appeal from the entry of judgment against them in their action to quiet title to the Blue Gum property, this court concluded that the "outcome of the unlawful detainer action[] was sufficient to bar further claims of irregularity in the foreclosure sale[] . . . ." (case No. H024770.)

12

The Ioanes raise other arguments challenging the order granting summary judgment to Thompson.  None requires reversal.

The Ioanes contend the trial court erroneously denied portions of their requests for judicial notice and excluded certain of their declarations and other filings.  This claim of error fails for two reasons.  First, the Ioanes do not direct us to where the rulings they are challenging can be found in the record.  On appeal, " '[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  To affirmatively show error, a party challenging a judgment or an appealable order has the burden of producing and citing to an adequate record.  (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; Cal. Rules of Court, rule 8.204(a)(1)(C) [matters referenced from the record in appellate briefs must be supported "by a citation to the volume and page number of the record where the matter appears"].)  Failure to include citations to the appellate record may result in forfeiture of a claim.  (*Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 800-801.)  Here, the Ioanes forfeited the issue by failing to cite the record.  Second, the Ioanes do not explain how the rulings prejudiced them.  An "appellant cannot prevail without establishing that [he or] she was prejudiced by the alleged error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 407; Cal. Const., art. VI, § 13.)

The Ioanes also argue that the trial court erred by granting summary judgment to Thompson on his quiet title cause of action "based on res judicata from the sustained demurrer on Briana [Ioane]'s cross complaint."  That claim misconstrues the trial court's ruling.  But, regardless of its accuracy, it lacks merit.  " '[I]t is axiomatic that we review the trial court's rulings and not its reasoning,' " such that we "may affirm a trial court's decision granting summary judgment for an erroneous reason." (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.)

Accordingly, the validity of the trial court's reasoning is of no concern to us and certainly does not compel reversal.

Finally, the Ioanes fault the trial court for permitting Thompson to file a second motion for summary judgment, arguing that multiple summary judgment motions are prohibited under section 437c, subdivision (f)(2) absent a showing of newly discovered facts. That provision states: "A party shall not move for summary judgment based on issues asserted in a prior motion for summary adjudication and denied by the court unless that party establishes, to the satisfaction of the court, newly discovered facts or circumstances or a change of law supporting the issues reasserted in the summary judgment motion." (§ 437c, subd. (f)(2).) Thompson's motion for summary judgment falls outside the scope of that provision because the prior motion was one for summary judgment, not summary adjudication. (*Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 71-72.) Moreover, the second motion was based in part on a different legal theory. Thompson's first summary judgment motion was based exclusively on the doctrines of claim and issue preclusion. The second summary judgment motion relies on judicially noticeable recorded documents to establish Thompson's chain of title. Accordingly, "the trial court properly exercised its discretion in determining that [section 437c, subdivision (f)(2)] did not bar summary judgment because the operative motion addressed an issue not raised by the prior motion." (*Id.* at p. 72.)

For all the foregoing reasons, the trial court did not err in granting summary judgment in favor of Thompson.

### B.     *Denial of the Ioanes' Motion for Summary Judgment*

The Ioanes filed an unsuccessful motion for summary judgment based on the theory that the foreclosure sale was invalid, having been conducted in violation of the automatic stay in Michael's bankruptcy proceeding. As discussed above, the Ioanes are

14

precluded from relitigating the validity of the foreclosure sale. Accordingly, the trial court did not err in denying their motion for summary judgment.

The Ioanes fault the trial court for issuing its order denying their summary judgment motion without giving them five days to approve the proposed order, a move they say violated California Rules of Court, rule 3.1312(a).[11] That rule provides that, unless the court orders otherwise, the prevailing party on any motion, within five days of the ruling, must serve on the other parties a proposed order for approval as conforming to the court's order. Here, the trial court issued a tentative ruling denying the Ioanes' summary judgment motion in advance of the summary judgment hearing and adopted a proposed order prepared by Thompson's counsel on the day of that hearing. Thompson does not address the Ioanes' argument regarding rule 3.1312(a) on appeal. Below, he asserted that his counsel "presented the Court with a form of proposed order that repeated verbatim the substantive portion of the tentative ruling." The tentative ruling is not in the record so we cannot confirm the accuracy of that assertion. Nor can we say whether the trial court violated rule 3.1312(a). It is possible that, in its tentative ruling, the court ordered the rule 3.1312(a) procedure not be followed; as noted, the rule applies only "[u]nless . . . the court orders otherwise . . . ." Assuming rule 3.1312(a) was violated, the Ioanes have not shown that they were prejudiced by that error. Therefore, reversal of the order denying their motion for summary judgment is not warranted.

### C. *Denial of the Ioanes' Motion for Leave to Amend Their Answers to the Operative Complaint*

The Ioanes moved to amend their answers to the operative complaint in 2015 to allow Briana to add allegations concerning her chain of title and to delete an admission that Michael "never held an interest" in the Blue Gum property. The trial court denied that motion on September 18, 2015, reasoning that "[t]he proposed amended answer

---

[11] All further rule references are to the California Rules of Court.

15

presents the same claims previously decided in this matter by Judge Marigonda when he sustained a demurrer to the proposed Cross-Complaint of Briana Ioane without leave to amend. The moving party is simply trying to relitigate that issue previously decided by the Court."

On February 6, 2018, the Ioanes filed a motion purporting to "reschedul[e]" the earlier motion, erroneously claiming it had been taken off calendar as moot. The trial court held a hearing on the motion for leave to amend and denied it. The Ioanes say that was error, but do not explain how they were prejudiced. It appears that Briana believes the amendments would bolster her claim to the Blue Gum property. But that issue has been decided and is not subject to relitigation. Accordingly, the trial court did not err and, even if it did, the Ioanes cannot establish prejudice.

### D.    *Denial of the Ioanes' Motion to Tax Costs*

Thompson filed a Memorandum of Costs on July 30, 2018. The Ioanes moved to tax costs on grounds that the memorandum was untimely. The trial court denied that motion, reasoning that the memorandum was timely. We agree.

As the trial court explained, the California Rules of Court provide that "[a] prevailing party who claims costs must serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal by the clerk under Code of Civil Procedure section 664.5 or the date of service of written notice of entry of judgment or dismissal, or within 180 days after entry of judgment, whichever is first." (Rule 3.1700(a)(1).) That time period is extended by five calendar days when service is by mail. (§ 1013, subd. (a).) Here, notice of entry of judgment was served *by mail* on July 10, 2018. Therefore, Thompson was required to serve and file his memorandum of costs within 20 days of July 10, 2018. He did so, filing the Memorandum of Costs on July 30, 2018.

### III.    DISPOSITION

The judgment is affirmed. Thompson shall recover his costs on appeal.

16

_____

ELIA, ACTING P.J.

WE CONCUR:



_____

BAMATTRE-MANOUKIAN, J.




_____

DANNER, J.




*Thompson*, *as Successor in Interest, etc. v. Ioane et al.*
H046111